UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:12-CV-132

COMMONWEALTH OF KENTUCKY,
by and through the
CABINET FOR WORKFORCE DEVELOPMENT
KENTUCKY DEPARTMENT FOR THE BLIND                        PLAINTIFF

v.

UNITED STATES, by and through
HONORABLE LEON E. PANETTA,
Secretary of Defense, and
HONORABLE JOHN McHUGH,
Secretary of the Army                                              DEFENDANT

## <u>MEMORANDUM OPINION</u>

This matter is before the Court upon Plaintiff's motion for a temporary restraining order

and preliminary injunction (DN 1).  Defendant has responded (DN 7) and Plaintiff has replied

(DN 8).  A hearing was held regarding the preliminary injunction before the Court at Paducah on

Tuesday, October 9, 2012, beginning at 11:00 a.m. Patrick Shirley appeared on behalf of the

Plaintiff, and Ben Schecter and Micah Reyner appeared on behalf of the Defendant. Terri Turner,

an official court reporter, recorded the proceedings. For the following reasons, Plaintiff's motion

for a temporary restraining order and preliminary injunction is DENIED.

## BACKGROUND

The current litigation arises out of a contract dispute at Fort Campbell,

Kentucky/Tennessee. Fort Campbell is a large military reservation, operated by the Defendant,

the United States of America (the "Government"), through its Department of Defense ("DoD")

and DoD's subdivision, the Department of the Army ("Army"). Plaintiff, the Kentucky

Department for the Blind ("KDB"), is the state licensing agency under the Randolph-Sheppard

Vending Stand Act of 1936, as amended by the Rehabilitation Act Amendments of 1974,

("RSA"), 20 U.S.C. §§ 107 *et seq.* The RSA provides preferential hiring treatment to blind

persons in the carrying out of vending services at federal facilities and on federal reservations.

      Under the RSA, state licensing agencies like the KDB are engaged in the day-to-day

administration of the Act pursuant to federal guidelines issued by the Department of Education.

As the state licensing agency under the RSA, the KDB trains and licenses blind persons, known

as licensed blind vendors, who are then eligible to bid on work at federal facilities. 20 U.S.C. §§

107a & 107d-4. Further, in the event that it appears a federal agency is not complying with the

priority provisions of the RSA, the KDB is authorized to challenge such noncompliance through

the RSA's arbitration scheme. *See* 20 U.S.C. §§ 107d-1 & 107d-2.

      Although the RSA applies to all federal agencies, the Secretary of the United States

Department of Education, through the Rehabilitation Services Administration ("DOE"), is

charged with interpreting, enforcing, and resolving disputes arising under the Act. The RSA's

implementing regulations are found in 34 C.F.R. §§ 395.1-395.38. Under these regulations, when

the KDB learns of a solicitation posted by the Government to which the RSA applies, the RSA's

priority provisions can work in one of two ways. First, 34 C.F.R. § 395.33(d) allows for direct

negotiations with the KDB, allowing the parties to skip the competitive procurement process. If a

federal agency bypasses the direct negotiation option, the RSA requires the agency to follow the

competitive procurement provision. In that process, an agency soliciting bids must first decide if

a blind vendor's bid is "within a competitive range and has been ranked among those proposals

which have a reasonable chance of being selected for a final award." 34 C.F.R. § 395.33(b). So

long as the bid is within the "competitive range," the preference embodied in the RSA kicks in,

and the licensed blind vendor selected by the KDB is given priority in receiving the contract award. *See* 34 C.F.R § 395.33(a) & (b).

As referenced above, the RSA also establishes an arbitration process designed to resolve disputes amongst parties involved in bidding. When a state licensing agency believes a federal agency has failed to comply with the RSA's solicitation and bidding requirements, it may file a complaint for arbitration with the Secretary of Education. 20 U.S.C. § 107d-1(b). Section 107d-2(a) of the RSA provides that the arbitration panel "shall . . . give notice, conduct a hearing, and render its decision which shall be subject to appeal and review as a final agency action." After the panel renders a decision, "the head of any. . . agency . . . shall cause such acts or practices to be terminated promptly and shall take such other action as may be necessary to carry out the decision of the panel." 20 U.S.C. § 107d-2(b)(2).

These parties have a long history, during which time they have utilized the gamut of mechanisms prescribed under the RSA and its implementing regulations, engaging both in direct negotiations and competitive procurement processes and seeking from both this Court and a DOE arbitration panel resolution of resulting disputes. Most recently in 2007, Fort Campbell solicited offers to perform dining facility attendant services ("DFA services")[1] and full food services at Ft. Campbell's military dining facilities, and invited the KDB to submit a bid. KDB's licensed blind vendor, James Hardin and his joint venture with KCA Corporation, First Choice, submitted a bid that was included in the competitive range; thus, per the RSA, First Choice was given priority and awarded the contract. That contract, currently being performed by Hardin's

---

[1] DFA services are custodial and janitorial services associated with dining facilities. It appears the DFA portion of the contract requires the contractor to keep the mess halls at Fort Campbell clean. Conversely, a full food services contract requires the additional task of meal preparation and requires the contractor to provide cooks.

successor at First Choice, Faye Autry, was scheduled to expire on September 30, 2012.[2]

In anticipation of that contract's expiration, Ft. Campbell posted Solicitation No. W9124812R0015 ("Solicitation") on August 28, 2012, seeking contractors to perform solely DFA services at Fort Campbell's military dining facilities. Under the Solicitation, the contract for DFA services was set aside for Historically Underutilized Business Zone (HUBZone) small businesses,[3] leaving the Army's cooks to perform the full food service duties. Neither the KDB nor First Choice qualifies as a HUBZone small business and therefore cannot place a bid under the Solicitation. Thereafter, the KDB contacted the Army, requesting that Ft. Campbell either enter into direct negotiations pursuant to 34 C.F.R. § 395.33(d) or amend the solicitation to allow the KFB to enter a bid according to the Act's competitive procurement procedure. The Army responded that it did not believe the RSA applies to contracts for DFA-only services and would continue with the Solicitation as a HUBZone small business set-aside. Thereafter, the KDB filed a demand for arbitration with the DOE's Rehabilitative Services Administration pursuant to 20 U.S.C. §§ 107d-1 and 107d-2 and 34 C.F.R. § 395.37.

The KDB initiated this action in an attempt to receive a temporary restraining order and preliminary injunction. The KDB first urges this Court to hold that the Army's solicitation for DFA-only services falls under the RSA and require the Government to change the Solicitation to allow the KDB to bid. The KDB argues that, just as a DOE arbitration panel decided in 2002,[4]

---

[2] Because of the instant controversy surrounding Ft. Campbell's most recent solicitation, during the preliminary injunction hearing the Government agreed to extend the 2007 contract until this Court completed its consideration of this matter. See the Court's October 15, 2012 Order (DN 9).

[3] The HUBZone program is designed to promote economic development in distressed areas by giving businesses that qualify access to federal contracting opportunities. See http://www.sba.gov/content/understanding-hubzone-program. Under 15 U.S.C. § 632, a HUBZone is "any area located with 1 or more (A) qualified census tracts; (B) qualified nonmetropolitan counties; (C) lands within the external boundaries of an Indian Reservation; (D) redesignated areas; or (E) base closure areas." 15 U.S.C. § 632(p)(1).

[4] In 2001, the KDB filed a demand for arbitration after Ft. Campbell attempted to solicit a DFA-only contract as a set aside under the Small Business Act 8(a) program. In a 2002 decision, the panel found that the solicitation was properly under the RSA because "[t]o exclude the [DFA] services would frustrate and is inconsistent with the

the Solicitation falls under the RSA and the Army is therefore required to follow the priority procedures outlined therein. KDB argues that because the parties have already addressed this issue before a DOE arbitration panel, it should not be forced to go through the time and expense of litigating it a second time. Alternatively, KDB asks the Court to issue a preliminary injunction to maintain the status quo; i.e., First Choice working at Fort Campbell, while the arbitration before the DOE is pending.

The Government contends that developments in the administrative and statutory framework since the 2002 arbitration support its decision that its Solicitation for DFA-only services does not fall under the RSA. Based on these developments, the Government asks the Court to hold the RSA inapplicable to the Solicitation. Alternatively, the Government contends that because a demand for arbitration is pending before the DOE, this Court lacks jurisdiction to issue an injunction because KDB has failed to exhaust its administrative remedies.[5]

## STANDARD[6]

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).

In determining whether to issue a preliminary injunction, the district court is required to consider four factors: (1) whether the movant is likely to prevail on the merits; (2) whether the movant would suffer an irreparable injury if the court does not grant a

---

priority afforded blind persons in military settings" and "[t]o deny the blind ... cafeteria work at military installations because food preparation is performed by the Army is to deny blind persons the effect of having priority for such work." *Kentucky Cabinet for Workforce Dev. Dep't for the Blind v. United States Dep't of Defense,* Case No. R–S/01–11 (Aug. 20, 2002). As a result, the Army was required to negotiate with KDB and First Choice in a manner consistent with the RSA, and KDB was ultimately awarded the contract.

[5] The Government reminds the Court of its decision to deny KDB's request for a preliminary injunction in 2001, where the Court noted exhaustion was particularly important because granting a preliminary injunction would have involved interpreting a statute that would bind future contract solicitations; thus the Court held that the DOE would be given the first opportunity to apply its expertise to whether DFA-only contracts fell under the RSA. *Kentucky Dep't for the Blind v. United States,* Civ. Action No. 5:01-cv-231 (W.D. Ky. Sept. 28, 2001).

[6] Since the Government has been afforded an opportunity to respond in this case, and the Court has held a hearing on the matter, the Court will simply treat the motion of the KDB as one for a preliminary injunction. *See* Fed. R. Civ. P. 65(b).

preliminary injunction; (3) whether a preliminary injunction would cause substantial harm to others; and (4) whether a preliminary injunction would be in the public interest.

*Abney v. Amgen, Inc.,* 443 F.3d 540, 547 (6th Cir. 2006) (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.,* 274 F.3d 377, 400 (6th Cir. 2001)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991).

"Despite the overall flexibility of the test for preliminary injunctive relief, and the discretion vested in the district court, equity has traditionally required such irreparable harm before an interlocutory injunction may be issued." *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 103 (6th Cir. 1982). To establish immediate and irreparable harm there must be an actual, viable, presently existing threat of serious harm. *Mass. Coalition of Citizens with Disabilities v. Civil Defense Agency and Office of Emergency Preparedness of the Commonwealth of Mass.,* 649 F.2d 71, 74 (1st Cir. 1981). Plaintiff must show injury that is not remote or speculative, but is actual and imminent. *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953); *Abney,* 443 F.3d at 552.

## DISCUSSION

Before reaching the merits of KDB's request for a preliminary injunction, the Court must first resolve whether it lacks jurisdiction because KDB has failed to exhaust its administrative remedies. These parties previously have come before the Court in a similar posture as they are today: in 2001 the KDB requested that the Court enjoin the Government from continuing with a solicitation for a DFA-only services contract until the RSA's applicability to the solicitation was resolved by a DOE arbitration panel. [7] There, the Court found it lacked jurisdiction to issue a

---

[7] *See Kentucky Dep't for the Blind v. United States*, Civ. Action No. 5:01-cv-231 (W.D. Ky. Sept. 28, 2001).

preliminary injunction because of the RSA's "elaborate arbitration procedure, with an ultimate

appeal to the Judiciary via the Administrative Procedure Act."[8] *See* 20 U.S.C. § 107d-2(a). After

reviewing prior courts' treatment of exhaustion under the RSA, the Court found it would be

improper to exercise jurisdiction before the parties had completed the arbitration process:

> "It is a 'long settled rule of judicial administration that no one is entitled to judicial relief
> for a supposed or threatened injury until the prescribed administrative remedy has been
> exhausted.'" *Randoph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 104
> (D.C. Cir. 1986) (quoting *Myers v. Bethelehem Shipbuilding Corp.*, 303 U.S. 41, 50-51
> (1938)). The exhaustion policy is "particularly viable where an established scheme of
> decision making might be undermined by permitting circumvention of administrative
> procedures." *Id.* (quotation and citation omitted). *See also Fillinger v. Cleveland Soc'y
> for the Blind*, 587 F.2d 336, 338 (6th Cir. 1978) ("Congress' decision to provide
> administrative and arbitration for aggrieved blind vendors clearly evidences a policy
> judgment that the federal courts should not be the tribunal of first resort for the resolution
> of such grievances. Rather congressional policy as reflected in the 1974 amendments is
> that blind vendors must exhaust their administrative and arbitration remedies before
> seeking review in the district courts.") . . . "Because a primary component of the relief
> requested by the Department is an interpretation of the statute at issue which will bind
> future contract solicitations, it is especially important that the Secretary of Education be
> give the first chance to apply his expertise. . . . The scope of the statute and the
> regulations promulgated thereunder should, in the first instance, be one for the agency
> charged with its interpretation" *Randolph-Sheppard Vendors*, 795 F.2d at 111 (citations
> and internal quotation omitted).

*Kentucky Dep't for the Blind v. United States,* Civ. Action No. 5:01-cv-231 (W.D. Ky. Sept. 28,

2001).

Since the Court's 2001 decision, federal courts have continued to decline to entertain

disputes like the one in the instant case before parties have submitted to arbitration. *See*

*Kentucky, Educ. Cabinet, Dep't for the Blind v. United States*, 424 F.3d 1222, 1229 (Fed. Cir.

2005) (holding that "for claims brought under the RSA, arbitration is mandatory."); *Colorado*

*Dep't of Human Servs. v. United States*, 74 Fed. Cl. 339 (2006) ("[T]his Court is without

jurisdiction to hear plaintiffs' claims or grant plaintiffs' requested preliminary injunction pending

the outcome of the arbitration panel's decision."). "Keeping with the federal courts for appeals

---

[8] *Id.* at 9.

that have examined this issue and based on congressional intent as expressed through the remedial scheme it established, this court concurs that exhaustion of administrative remedies is required under the Randolph-Sheppard Act." *Alabama Dep't of Rehab. Servs. v. U.S. Dep't of Veterans Affairs*, 165 F. Supp.2d 1262, 1269 (M.D. Ala. 2001).

The KDB does not dispute that administrative remedies have not been exhausted here: although the KDB has filed a demand for arbitration in this matter, the parties at the hearing indicated that the matter has not been scheduled, let alone decided by a DOE panel. However, KDB argues that the Court should find an exception to the exhaustion of remedies doctrine, as "no purpose of exhaustion is served by forcing [the KDB] to go through a second arbitration on an issue that it has already prevailed upon against these defendants." (Pl.'s Reply DN 8). The KDB further asserts that because the facts in the instant case are nearly identical to those before the Court in 2001 and the arbitration panel in 2002, the issue between the parties is a "pure matter of law as to which specialized administrative understanding plays little role." *Ala. Dep't of Rehab. Servs.*, 165 F. Supp.2d at 1275 (quoting *Ezratty v. Puerto Rico*, 648 F.2d 770, 774 (1st Cir. 1981)).

However the Government has not "ignore[d] the results of the arbitration and then go[ne] back and repeat[ed] the same conduct that led to the initial arbitration," as KDB contends. (DN 8). Rather, since the 2002 arbitration panel's finding that a contract for DFA-only services falls under the RSA's purview, the DOE has been a member of a joint committee with the DoD that has sought to clarify the RSA's applicability to food service contracts at military dining facilities. In addition to the RSA, the Javits-Wagner-O'Day Act ("JWOD") also regulates government procurement for services provided by the blind.[9] After confusion arose within the military as to

---

[9] "In a nutshell, the JWOD defines its preference in terms of 'direct labor' performed by blind individuals, whereas the RSA extends the blind vendor preference to all facets of the 'operation' of vending facilities, to include

which statute applied to contracts at military dining facilities, Congress requested that the DOE
and DoD issue a joint report on the matter. Most pertinently here, the joint committee
recommended that when the DoD seeks a contractor to "exercise management responsibility and
day-to-day decision-making for the overall functioning of a military dining facility," the RSA
would apply; but that "when the DoD needs dining support services, (e.g. food preparation
services, food serving, ordering and inventory of food, meal planning, cashiers, mess attendants,
or other services that support the operation of a dining facility)," the contracts would be set aside
under JWOD "(or small businesses if there is no JWOD nonprofit agency capable or interested)."

Testimony from James Ives, a litigation attorney for the Army, indicated that the Army
interprets this joint report and the legislation passed following the committee's recommendations
to mean that where a contract calls for a contractor to "operate" an entire military dining facility,
the RSA applies. However, where a solicitation involves a new contract for services merely in
support of those facilities, like the one at issue in this case, the RSA does not apply. For those
solicitations, the Army gives preference first to JWOD, and if a JWOD contractor does not
express interest, sets aside the contract for a small business interest such as HUBZone. Ives
further testified that prior to issuing the Solicitation, Fort Campbell's contracting officer spoke
with the base's JWOD representative about issuing the DFA-only contract under JWOD, but the
JWOD representative indicated the services were not on its procurement list and instead deferred
to the contracting officer to implement the Solicitation under another program.

Based on the apparently evolving policy on the applicability of the RSA to contracts for
DFA-only services, requiring the KDB to submit its claims to a DOE arbitration panel before

---

supervision and management. *Compare* 41 U.S.C. § 47(b)(3)(C), (b)(5) (JWOD), *with* 20 U.S.C. § 107(a) (RSA). …
Further, the RSA preference extends directly to blind persons (licensed by their respective state licensing agencies);
unlike the JWOD, the RSA does not employ a 'qualified non-profit agency for the blind' as a middle man when
exercising the preference. *See* 20 U.S.C. § 107(a)." Major Erik L. Christiansen, *The Applicability of the Randolph-
Sheppard Act to Military Mess Halls*, Army Law., Apr. 2004, 1, 13 n.78.

requesting relief from this Court is not forcing it to relitigate the same issue. The KDB asserts that because the Solicitation has been set aside for HUBZone businesses and not under JWOD, the joint committee's recommendations and Ives's testimony are irrelevant. However, a report co-authored by the DOE, the same agency charged with adjudicating potential violations of the RSA, asserted that "when the DoD needs dining support services," the contracts would be set aside under JWOD "(or small businesses if there is no JWOD nonprofit agency capable or interested)." Thus, a DOE arbitration panel may find the Solitation proper in light of the language in these recommendations.

Additionally, the Court does not view this dispute as purely a matter of law to which administrative expertise adds little.  As indicated above, it appears DOE policy regarding the applicability of the RSA to DFA-only services is changing. To resolve this dispute, a tribunal must decide (1) whether the RSA's applicability to a DFA-only contract has changed since these parties last litigated this issue and (2) if so, if setting aside the Solicitation not for JWOD businesses, but instead HUBZone businesses conforms with the joint committee's recommendations. In light of these issues, both the parties would be better served by an arbitration before the DOE, whose familarity with these issues far exceeds that of this Court. Therefore, the Court finds no reason to intervene in this case before KDB has exhausted its administrative remedies.

The Government argues that by deferring to the DOE's expertise in this matter, the Court is implicitly deciding that the RSA applies to DFA-only contracts, as arbitration is only required for contracts to which the RSA applies. This is not so. Rather, the Court holds, just as it did in 2001, that "[t]he scope of the statute and the regulations promulgated thereunder should, in the first instance, be one for the agency charged with its interpretation." *Kentucky Dep't for the Blind,* Civ. Action No. 5:01-cv-231 (quoting *Randolph-Sheppard Vendors*, 795 F.2d at 111.

On a final note, even if this Court were to find it had jurisdiction to issue a preliminary injunction, KDB has not shown that such an "extraordinary remedy" is warranted in this case. As discussed at length above, in light of the DOE's evolving views on the applicability of the RSA to DFA-only contracts, it is not clear that the KDB will prevail on the merits. Secondly, during the preliminary injunction hearing, the Government indicated that it would stay the Solicitation pending arbitration were this Court to hold, as it does now, that the parties must submit their dispute to arbitration. Because the Government intends to discontinue the Solicitation and maintain the status quo until the parties complete the arbitration process, the KDB cannot show it will suffer irreparable harm in this case.

## CONCLUSION

For the reasons expressed above, the Plaintiff's motion for a preliminary injunction is DENIED and this action is hereby DISMISSED WITHOUT PREJUDICE until the Plaintiff exhausts its administrative remedies. An appropriate order shall issue.

CC: Counsel