UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00132-TBR

COMMONWEALTH OF KENTUCKY,
by and through the
EDUCATION AND WORKFORCE
DEVELOPMENT CABINET
KENTUCKY OFFICE FOR THE BLIND                                      Plaintiffs,

v.

UNITED STATES OF AMERICA                                           Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon the motion to stay filed by the United States of America. (Docket No. 43.) The Commonwealth of Kentucky, by and through the Education and Workforce Development Cabinet Office for the Blind ("OFB"), has responded, (Docket No. 44), and the United States has replied, (Docket No. 52). Also before the Court is the United States' motion for reconsideration, (Docket No. 42), to which the OFB has responded, (Docket No. 45), and the United States has replied, (Docket No. 51). Fully briefed, these matters stand ripe for adjudication. For the reasons set forth below, the Court will GRANT the United States' motion to stay, (Docket No. 43), and will DENY the United States' motion for reconsideration, (Docket No. 42), with leave to refile.

**Factual Background**

As the Court has stated in its prior memoranda, this case concerns the Fort Campbell military base located in Kentucky and operated by the United States through its Department of Defense ("DOD") and the Department of the Army ("the Army"), a DOD subdivision. The contract dispute arises from the solicitation of bids for Contract W91248-13-D-0001, which governs certain services at Fort Campbell's dining facilities. Although the Army had previously contracted for full food services, the solicitation at

1

issue sought bids for only dining facility attendant services ("DFA services")—that is, janitorial and custodial functions, including sweeping, mopping, scrubbing, trash removal, dishwashing, waxing, stripping, buffing, window-washing, pot- and pan-cleaning, and related quality control. (*See* Docket No. 40 at 16.) The solicitation pronounced that the Army would accept proposals exclusively from vendors who qualified for the Small Business Association's HUBZone program.

In the instant lawsuit, the OFB filed a motion for permanent injunction, arguing that it was entitled to priority for the contract pursuant to the Randolph-Sheppard Vending Stand Act ("the Randolph-Sheppard Act"). The Randolph-Sheppard Act affords blind vendors priority during the bidding process for the operation of vending facilities in federal buildings. 20 U.S.C. §§ 107-107e. The Army objected, arguing instead that the Randolph-Sheppard Act applies only when solicitations are sought for the *operation* of military dining facilities, not for only DFA services. The Army argued that the Javits-Wagner-O'Day Act ("the JWOD Act"), 41 U.S.C. §§ 46-48c, established the appropriate statutory scheme for DFA solicitations and contracts and that the Randolph-Sheppard Act did not apply.

The Court initially determined that because the OFB had not exhausted its remedies under the Randolph-Sheppard Act's arbitration scheme, federal jurisdiction was premature. The OFB appealed this decision to the Sixth Circuit. Meanwhile, the parties continued to arbitrate the conflict. On February 14, 2014, an arbitration panel issued a divided decision in the OFB's favor, concluding that the Randolph-Sheppard Act applied to DFA services and that the Army's solicitation improperly failed to afford priority to a blind vendor. On July 21, 2014, the Sixth Circuit held that this Court erred in its earlier jurisdictional analysis and remanded the OFB's request for permanent injunction for decision on its merits.

In its December 29, 2014, memorandum, the Court again considered the OFB's request for permanent injunction. Much of the Court's analysis was devoted to considering whether the arbitration panel's decision in favor of the OFB constituted actual success on the merits. Because the Court concluded that no judicial review was available for a Randolph-Sheppard Act arbitration panel's decision,

it determined that the OFB had satisfied this requirement and that injunctive relief was appropriate. The Court ordered the Army to rescind Contract W91248-13-D-0001 and to negotiate a new contract for DFA services in accordance with the Randolph-Sheppard Act's provisions, affording due preference to the OFB's licensed blind vendor.

In the instant motion for reconsideration, the United States points to congressional language enacted only days before the Court's order and that provides a more precise explanation of the two statutory schemes. The Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015 ("2015 NDAA") was signed into law on December 19, 2014, authorizing funds "to be appropriated for the fiscal year 2015 for procurement for the Army, the Navy and the Marine Corps, the Air Force, and Defense-wide activities . . ." Pub. L. No. 113-291, Sec. 101.

The 2015 NDAA incorporates a "Joint Explanatory Statement to Accompany the National Defense Authorization for Fiscal Year 2015," printed in the Congressional Record for December 4, 2014, and designates that it "shall have the same effect with respect to the implementation of this Act as if it were a joint explanatory statement of a committee of conference." Pub. L. No. 113-291, Section 5. The Explanatory Statement expressed that "concern[] with the lack of regulatory guidance on the application of the JWOD Act (41 U.S.C. 8501 et seq.) and Randolph-Sheppard Act 20 U.S.C. 107 et seq.) to military dining facilities." (Docket No. 42-3, at 92-93.) Although the Explanatory Statement notes that Congress once sought "to resolve this long-standing issue" by requiring a Joint Policy Statement," it acknowledged that the Statement offered little clarification. "[W]ithout complementary regulations to implement the Joint Policy Statement, confusion remains on when to apply the two acts, particularly with regard to new contracts . . . ." *Id.* at 93.

Seeking to quell the ongoing confusion, the Explanatory Statement provides:

> Pursuant to the Joint Policy Statement, the Randolph-Sheppard Act applies to contracts for the operation of a military dining facility, or full food services, and the Javits-Wagner-O'Day Act applies to contracts and

> subcontracts for dining support services, or dining facility attendant services, for the operation of a military dining facility.

*Id.* at 93. The Explanatory Statement further directs that

> [n]ot later than 180 days after the date of the enactment of this Act, the Secretary of Defense shall prescribe implementing regulations for the application of the two acts to military dining facilities. Such regulations shall implement the Joint Policy Statement and specifically address DOD contracts that are not covered by section 856 of Public Law 109-364."

*Id.* at 93.

## Legal Standard

The United States identifies three possible bases for reconsideration of the Court's order, each of which affords the district court considerable discretion to revisit a prior order. Rule 59 allows a court to alter or amend a judgment based on "'(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to permit manifest injustice.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). Rule 52(b) allows a party to move the Court to amend its findings or make additional findings and amend its judgment accordingly. Fed. R. Civ. P. 52(b). Rule 60(b) provides six grounds upon which a court may provide relief from a final order, including any reason not otherwise listed but that justifies relief. Fed. R. Civ. P. 60(b)(6). Motions to reconsider under Rule 60(b) provide an "opportunity for the court to correct manifest errors of law or fact and to review newly discovered evidence or to review a prior decision when there has been a change in the law." *United States v. Davis*, 939 F. Supp. 810, 812 (D. Kan. 1996).

## Analysis

Congress's directive fills the legislative silence that this Court and other adjudicating bodies have confronted.[1] There can be little doubt that the new congressional guidance directly impacts the Court's earlier analysis. With the 2015 NDAA, Congress has explicitly stated that the Randolph-Sheppard Act

---

[1] For example, the dissenting member of the arbitration panel noted that "individuals of goodwill can disagree on the meaning of the statute" and that "[c]larification from the DOE and potentially legislation from Congress is necessary to resolve the issue." (*See* Civil Action No. 5:14-cv-00056-TBR, Docket No. 1-1, at 40.)

applies to contracts for the operation of a military dining facility—that is, to full food services—and that it does not apply to the DFA services that are the subject of this litigation. Therefore, Congress has expressed that it does not intend to grant bidding priority to blind vendors for the DFA services, including those at issue in Contract W91248-13-D-0001.

Of course, the Court's earlier ruling was issued without the benefit of this clarification. However, it now appears that that order is at odds with the legislation that provides funding for Contract W91248-13-D-0001. Although the Court is careful to avoid judicial review of the arbitration panel's decision, the OFB's likelihood of success on the merits seems to deteriorate given this new language. Neither the 2015 NDAA nor the Explanatory Statement that it incorporated existed at the time of the arbitration panel's order. Moreover, the Court acknowledges that enforcement of its own order would require the Army to expend considerable human and financial resources to reopen the bidding process and comply with federal acquisition requirements. Should the Court ultimately reverse its decision, the Army would be unable to recover those resources. Moreover, while the Court maintains high regard for the goals of the Randolph-Sheppard Act, it also acknowledges the robust public interest in ensuring that the law is effectuated properly—that is, in accordance with congressional intent.

Furthermore, although the OFB relies upon the Memorandum on Federal Support for the Randolph-Sheppard Vending Facility Program in support of its position, the Court is less convinced. This presidential memorandum reads, in relevant part:

> I direct all agencies that have property management responsibilities to ensure that agency officials, when pursuing the establishment and operation of vending facilities (including cafeterias and military dining facilities) as defined in 20 U.S.C. §107e, issue permits and contracts in compliance with the Randolph-Sheppard Program and consistent with existing regulations and law.

(Docket No. 45-2.) The Court makes no judgments concerning the persuasive effect of this memorandum upon the instant litigation. However, it notes that the memorandum refers to the "operation" of military dining halls and other facilities. As the Court explained in its previous order, the word "operation" has

generally been understood to refer to broader responsibilities than those encompassed by the provision of DFA services.

With this in mind, the Court concludes that this new congressional activity renders enforcement of the preliminary injunction inappropriate at this time. The Court will stay enforcement of its December 29, 2014, order during the 180-day period within which Congress directed the DOD to issue its regulations. The Court recognizes the OFB's concern that the DOD will fail to issue such regulations within the mandated 180-day period. The United States maintains that the DOD has begun the process of enacting the required regulation, and that the Defense Acquisition Regulations Council has approved opening a case based on the 2015 NDAA. However, should the DOD fail to issue such regulations during this 180-day period, the Court will revisit the matter upon motion of the parties.

The Court recognizes that the DOD regulations will offer additional guidance to all involved—and, as the OFB notes, may not assume the form that the United States envisions. With this in mind, the Court will deny the United States' motion for reconsideration for the time being, finding it premature. The United States is granted leave to refile its motion upon the issuance of the DOD regulations.

**Conclusion and Order**

Therefore, the Court having been moved to stay the enforcement of its December 29, 2014, order, having been moved to reconsider the same order, and being otherwise sufficiently advised, IT IS HEREBY ORDERED that the United States' motion to stay, (Docket No. 43), is hereby GRANTED. Pursuant to Federal Rule of Civil Procedure 62(b), enforcement of the Court's December 29, 2014, order, (Docket No. 41), is stayed pending further order by this Court. IT IS FURTHER ORDERED that the permanent injunction issued in this case is stayed; the Army need not comply with the requirements set forth in it.

Moreover, IT IS ORDERED that the United States' motion for reconsideration, (Docket No. 42), is hereby DENIED for the pendency of the 180-day period designated by Pub. L. No. 113-291, with leave

to refile. The Office for the Blind shall notify the Court by motion should the Department of Defense fail to issue the awaited regulations within the 180-day period.