UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00132-TBR

COMMONWEALTH OF KENTUCKY,
by and through the
EDUCATION AND WORKFORCE
DEVELOPMENT CABINET
KENTUCKY OFFICE FOR THE BLIND                                                      Plaintiffs,

v.

UNITED STATES OF AMERICA                                                             Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the motion of the Commonwealth of Kentucky, by and through the Education and Workforce Development Cabinet Office for the Blind ("OFB"). On April 7, 2015, the Court stayed enforcement of the Order issued on December 29, 2014. (Docket No. 53.) The OFB now urges the Court to lift this stay. (Docket No. 58.) The United States of America has responded, (Docket No. 60), and the OFB has replied, (Docket No. 61). For the reasons set forth below, the Court will DENY the OFB's motion.

### Background

The Court's prior Memorandum Opinions provide a complete discussion of the context of this action. (Docket Nos. 11, 41, 53.) The Court recognizes both the complexity of these matters and the procedural twists and turns that this litigation has endured. Therefore, the Court will again recount the facts pertinent to the instant motion. To the extent that the Court limits its recitation here, any facts previously mentioned are incorporated by reference.

This litigation concerns the Fort Campbell military base, operated by the United States through its Department of Defense ("DOD") and the Department of the Army ("the Army"). The contract dispute arises from the solicitation of bids for Contract W91248-13-D-0001, which governs certain services at Fort Campbell's dining facilities. Although the Army had previously contracted for full food services, the solicitation at issue sought bids for only dining facility attendant services ("DFA services")—that is, janitorial and custodial functions, including sweeping, mopping, scrubbing, trash removal, dishwashing, waxing, stripping, buffing, window-washing, pot- and pan-cleaning, and related quality control. (*See* Docket No. 40 at 16.) The solicitation pronounced that the Army would accept proposals exclusively from vendors who qualified for the Small Business Association's HUBZone program.

The OFB filed a motion for permanent injunction, arguing that it was entitled to priority for the contract pursuant to the Randolph-Sheppard Vending Stand Act ("the Randolph-Sheppard Act"). (Docket No. 27.) The Randolph-Sheppard Act affords blind vendors priority during the bidding process for the operation of vending facilities in federal buildings. 20 U.S.C. §§ 107-107e. The Army objected, arguing that the Randolph-Sheppard Act applies only when solicitations are sought for the operation of military dining facilities, not for DFA services. The Army contended that the Javits-Wagner-O'Day Act ("the JWOD Act"), 41 U.S.C. §§ 46-48c, governs DFA solicitations and that the Randolph-Sheppard Act did not apply.

The Court initially determined that because the OFB had not exhausted its remedies under the Randolph-Sheppard Act's arbitration scheme, federal jurisdiction was premature. (Docket No. 11.) The OFB appealed this decision to the Sixth Circuit. Meanwhile, the parties continued to arbitrate the conflict. On February 14, 2014, an arbitration panel issued a divided decision in the OFB's favor, concluding that the Randolph-Sheppard Act applied to DFA services and that the Army's solicitation improperly denied priority to a blind vendor. On July 21, 2014, the Sixth Circuit held that this Court erred in its earlier analysis and remanded the OFB's request for permanent injunction. On December 29, 2014, the Court granted the OFB's Motion for Permanent Injunction. (Docket No. 41.) Accordingly, the

Court granted injunctive relief in favor of the OFB, ordering the Army to negotiate a new contract for DFA services and to afford due preference to the OFB's licensed blind vendor.

However, on January 9, 2015, the United States urged the Court to reconsider its Order in light of the Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015 ("2015 NDAA"). (Docket No. 42.) Signed into law on December 19, 2014, the 2015 NDAA clarifies the scope of the Randolph-Sheppard and JWOD Acts. Its "Joint Explanatory Statement to Accompany the National Defense Authorization for Fiscal Year 2015" expressed "concern[] with the lack of regulatory guidance on the application of the JWOD Act (41 U.S.C. 8501 et seq.) and Randolph-Sheppard Act (20 U.S.C. 107 et seq.) to military dining facilities." Pub. L. No. 113-291, Section 5. Seeking to quell this confusion, the Explanatory Statement provided:

> Pursuant to the Joint Policy Statement, the Randolph-Sheppard Act applies to contracts for the operation of a military dining facility, or full food services, and the Javits-Wagner-O'Day Act applies to contracts and subcontracts for dining support services, or dining facility attendant services, for the operation of a military dining facility.

*Id.* at 93. The Explanatory Statement further directed that

> [n]ot later than 180 days after the date of the enactment of this Act, the Secretary of Defense shall prescribe implementing regulations for the application of the two acts to military dining facilities. Such regulations shall implement the Joint Policy Statement and specifically address DOD contracts that are not covered by section 856 of Public Law 109-364.

*Id.* at 93.

In an effort to conform to this guidance, the Court stayed enforcement of its December 29, 2014, Order granting injunctive relief to the OFB. The Court issued its stay for the pendency of the 180-day period within which Congress directed the DOD to issue regulations. (Docket No. 53.)

**Analysis**

In the instant motion, the OFB asks the Court to lift the stay of its enforcement of its Order, arguing that the Secretary of Defense has failed to issue the regulations that the Explanatory Statement

3

requires. (Docket No. 58.) According to the OFB, there is no indication that these regulations are on the horizon: the Department of Defense has not issued notice of rulemaking, nor has it opened a case to amend the Defense Federal Acquisition Regulations. Because the Department of Defense has failed to issue required regulations on other occasions, the OFB contends that there is no basis to expect that the Department will do so here.

The United States admits that the Department of Defense has failed to issue these regulations within the 180-day period established by the 2015 NDAA. (Docket No. 60 at 3.) However, it contends that the Department has achieved significant progress in drafting such regulations and shepherding them through the rulemaking process. The United States maintains that on February 12, 2015, the Defense Acquisition Regulations Council ("DAR Council") voted to open a case to draft the regulations required by the Explanatory Statement. The twenty-two member *ad hoc* committee created for this task has met each Monday since March 16, 2015, to draft the regulations. (Docket No. 60-3 at ¶ 8.) Department of the Air Force Associate General Counsel Marcia J. Bachman submits that on June 24, 205, the drafting committee submitted "a draft rule to be incorporated into the Defense Federal Acquisition Regulation Supplement, a draft Federal Register Notice, and supporting documentation (e.g., draft initial analysis required by the Regulatory Flexibility Act)." (Docket No. 60-3 at ¶ 9.) On July 15, 2015, the DAR Council formally discussed the draft rule and directed the committee to submit a revised draft no later than July 29, 2015. (Docket No. 60-3 at ¶ 9.) She anticipates that the proposed regulation will be published in the Federal Register by mid-September. (Docket No. 60-3 at ¶ 11.) Ms. Bachman also notes that the DAR Council is currently considering an interim rule that would become effective upon publication. (Docket No. 60-3 at ¶ 10.)

Given Ms. Bachman's confidence that the regulations will be published in the coming months, the Court will continue to stay this matter for the time being. The Court acknowledges the Department's failure to satisfy Congress's 180-day deadline. However, the Court is reluctant to lift the stay of prior Order, thus reinstating the OFB's injunctive relief, only to perhaps change course again upon publication

of the regulations. Although leaving the status quo in place is not ideal, it remains the best option to avoid confusion in the future.

Finally, the Court remains mindful of this litigation's impact upon Faye Autry, the visually impaired vendor who was displaced from her job. The OFB argues that for over two years, this dispute has deprived Ms. Autry of the opportunity to work. (Docket No. 58 at 3.) However, the United States advises that on September 29, 2014, the Army awarded a contract to the OFB to provide full food services at Fort Campbell. The initial contract period was for twelve months, with four additional one-year option periods, the first of which has been authorized. The OFB named Ms. Autry as the visually impaired vendor to participate in this contract. (Docket No. 60 at 3; Docket No. 60-2 at ¶¶ 4-5.) Of course, this position is not the one to which the OFB claims that Ms. Autry is entitled. However, the Court is pleased that she remains employed while this litigation progresses.

## ORDER

For the reasons set forth above, IT IS ORDERED that the OFB's Motion to Lift Stay, (Docket No. 58), is hereby DENIED. The United States is directed to notify the Court upon the enactment of an interim rule and upon the publication of the final regulations in the Federal Register. Moreover, the OFB shall notify the Court by motion should the Department of Defense fail to issue the awaited regulations within sixty days from the date of this Order.