UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00132-TBR

COMMONWEALTH OF KENTUCKY
*by and through* the EDUCATION AND
WORKFORCE DEVELOPMENT
CABINET OFFICE FOR THE BLIND,                                                        Plaintiff,

v.

UNITED STATES OF AMERICA,
*by and through* the Honorable Leon E. Panetta,
Secretary of Defense, and the Honorable
John McHugh, Secretary of the Army,                                                  Defendant.

**MEMORANDUM OPINION AND ORDER**

Previously, the Court held that the Randolph-Sheppard Act, ch. 638, 49 Stat. 1559 (1936) (codified as amended at 20 U.S.C. §§ 107–107e (2012)), required the Government to afford blind vendors priority when bidding on solicitations to provide dining-facility-attendant services for Fort Campbell, Kentucky. Only days before the Court issued its opinion, however, Congress instructed the Secretary of Defense to promulgate regulations clarifying that the Act called for no such preference. In light of Congress's directive, the Court stayed its earlier Order—first for a 180-day period, and then for an additional 60-day period—during which times the Department of Defense was supposed to publish the regulations. It didn't, and the Office for the Blind has renewed its motion to lift the stay. Nevertheless, because the Government continues to shepherd the proposed regulations toward publication, the Office for the Blind's Motion to Lift Stay (R. 63) is **DENIED**.

1

## I.

The general facts of this case are described in this Court's many prior opinions, but are repeated as necessary to resolve the Office for the Blind's present motion. On December 29, 2014, this Court held that the U.S. Department of the Army wrongly denied blind persons priority in bidding on a contract to provide dining-facility-attendant services for Fort Campbell, Kentucky. *See Kentucky ex rel. Educ. & Workforce Dev. Cabinet Office for the Blind v. United States*, No. 5:12-CV-00132-TBR, 2014 WL 7375566, at *4–8 (W.D. Ky. Dec. 29, 2014). Accordingly, the Court enjoined the Department to renegotiate that contract after affording the Office for the Blind's licensed vendor the preference due under the Randolph-Sheppard Act. *Id.* at *14.

Only days before the Court entered that injunction, however, Congress passed the Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015, Pub. L. No. 113-291, 128 Stat. 3292 (2014). Among other things, the Act adopted the explanatory statement of Chairman McKeon as the functional equivalent of "a joint explanatory statement of a committee of conference." § 5, 128 Stat. at 3312–13 (codified at 10 U.S.C. § 101 note). The explanatory statement, in turn, directed the Secretary of Defense to promulgate, within 180 days, regulations clarifying that blind vendors were not entitled to preferential status when bidding on contracts to provide dining-facility-attendant services (as opposed to contracts to provide full-food services). *See* Staff of H. Comm. on Armed Servs., 113th Cong., Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015: Legislative Text and Joint Explanatory Statement 786–87 (Comm. Print 2015), *as reprinted in* 160 Cong. Rec. H8671, H8691 (daily ed. Dec. 4, 2014).

In light of the conflict between the Court's opinion and Congress's directive, the Government moved to stay the Court's Order. R. 43 at 1 (Motion to Stay). On April 7, 2015, the Court agreed to stay its Order for the 180-day period during which the Department was to publish the proposed regulations. *See Kentucky ex rel. Educ. & Workforce Dev. Cabinet Office for the Blind v. United States*, No. 5:12-CV-00132-TBR, 2015 WL 1541987, at *4 (W.D. Ky. Apr. 7, 2015). The 180-day period elapsed, however, and no regulations followed. Consequently, the Office for the Blind moved the Court to lift the stay on July 2, 2015. R. 52 at 1 (Motion to Lift Stay). The Government urged restraint: It proffered that the proposed regulations would be published in the *Federal Register* no later than September 2015—or so it anticipated. R. 60 at 4 (Response in Opposition). The Court left the stay intact and directed the Office for the Blind to renew its motion should the Government not act within a 60-day period. *See Kentucky ex rel. Educ. & Workforce Dev. Cabinet Office for the Blind v. United States*, No. 5:12-CV-00132-TBR, 2015 WL 4718525, at *3 (W.D. Ky. Aug. 7, 2015). That 60-day period has elapsed too, the Office for the Blind has renewed its motion to lift the stay. R. 63 at 3. The Government opposes the motion. R. 64 at 1 (Response in Opposition).

## II.

Subject to congressional limitation, this Court is vested with inherent powers "to process litigation to a just and equitable conclusion." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978) (citing *Ex parte Peterson*, 253 U.S. 300, 312–14 (1920)). Among those is the Court's authority to stay its own orders. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay

3

proceedings as an incident to its power to control its own docket." (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936))); *see also In re NLO, Inc.*, 5 F.3d 154, 157 (6th Cir. 1993); *Jewell v. Davies*, 192 F.2d 670, 672–73 (6th Cir. 1951). In exercising its judgment, this Court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255 (citing *Kan. City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931); *Enelow v. N.Y. Life Ins. Co.*, 293 U.S. 379, 382 (1935)).

### III.

Consistent with this Court's prior instructions, the Office for the Blind has renewed its motion to lift the stay and enforce the Court's Order of December 29, 2014. R. 63 at 1. To its credit, the Government has filed a well written and suitably supported response which explains the Department's rulemaking process generally as well as the progression of the proposed regulations particularly. *See* R. 64 at 2–4. The Government candidly admits that, in all likelihood, the proposed regulations will not "be published within the next 90 days." *Id.* at 4. But the Government points to the "substantial work [that] has occurred on the proposed regulations" since last the Court spoke on the issue and asks the Court to maintain the status quo for a bit longer. *Id.* at 3.

Reluctantly, the Court agrees. Even so, the Court is troubled by the Department's inability to publish the proposed regulations in a timely fashion. The "most obvious way" that Congress controls "agency behavior is to regulate . . . the timing of agency decision making." Jacob E. Gersen & Anne Joseph O'Connell, *Deadlines in Administrative Law*, 156 U. Pa. L. Rev. 923, 926 (2008). Hence, when "Congress expresses its intent that regulations be promulgated by a date certain, that intent is of utmost importance." *Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 53 (D.D.C. 2006).

While the Court appreciates the competing demands for its resources, the Department "cannot decide which duties to perform and which duties to ignore, [but] must perform the duties which Congress intends [it] to perform."  *Orion Reserves Ltd. P'ship v. Kempthorne*, 516 F. Supp. 2d 8, 12 (D.D.C. 2007) (citing *Marathon Oil Co. v. Lujan*, 937 F.2d 498, 500 (10th Cir. 1991)).

As far as the Court is able to discern, there is no extraordinary justification for the Department's delay.  President Obama signed the Act into law on December 19, 2014. *See* Statement on Signing the Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015, 2014 *Daily Comp. Pres. Doc.* 1–2 (Dec. 19, 2014).  Yet the Department waited until February 12, 2015 to initiate the formal rulemaking process.  *See* R. 64-1 at 5 (Neilson Declaration).  The Department then took more than four months to produce a rough draft of the proposed regulation—only the second benchmark in the seventeen-step process.  *Id.* at 5–6.  "Whether the delays at every stage are the result of the [Department's] 'persistent excess of optimism,' or attributable to bureaucratic inefficiencies, there must be an end to the process sometime soon."  *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1150 (D.C. Cir. 1992) (citations omitted) (quoting *Pub. Citizen Health Research Grp. v. Brock*, 823 F.2d 626, 628–29 (D.C. Cir. 1987)); *see also Bruce v. U.S. Dep't of Def.*, No. CIV.A. 87-0425-LFO, 1987 WL 13140, at *3 (D.D.C. June 16, 1987).

However, because the Department has made some progress toward promulgating the regulations, there is reason for the Court to stay its hand.  *See In re Ctr. for Auto Safety*, 793 F.2d 1346, 1354 (D.C. Cir. 1986).  But it will not do so indefinitely.  When an agency or department disregards the express will of Congress, "it is insufficient for [it] to

5

demonstrate only that it has proceeded in good faith; it must demonstrate that it has exercised 'utmost diligence' in its efforts to comply with the statute." *Johnson*, 444 F. Supp. 2d at 53 (citing *Sierra Club v. Thomas*, 658 F. Supp. 165, 171 n.5 (N.D. Cal. 1987); *State v. Gorsuch*, 554 F. Supp. 1060, 1065 n.4 (S.D.N.Y. 1983)). Should the Department fall short of that mark, the Court will consider alternative means of bringing the rulemaking process to a close. *See, e.g.*, *Natural Res. Def. Council, Inc. v. EPA*, 797 F. Supp. 194, 198 (E.D.N.Y. 1992) ("Because [the] EPA has already failed to comply with the statutory deadline without adequate justification, the Court's only recourse is to develop a revised timetable.").

## IV.

For the reasons discussed above, and being otherwise sufficiently advised;

**IT IS HEREBY ORDERED** that the Education and Workforce Development Cabinet Office for the Blind's Motion to Lift Stay (R. 63) is **DENIED**;

**IT IS FURTHER ORDERED** that the United States **SHALL** notify the Court upon the publication of an interim rule and of the final regulations in the *Federal Register*;

A Telephonic Status Conference is scheduled for **February 18, 2016 at 10:00 a.m. CST**, at which time the Government will update the Court as to the Department's progress on this matter. The Court will place the call.

**IT IS SO ORDERED.**

Date:

cc:     Counsel of Record